

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Mrs. Violet S. Greenhill, Chief
Division of Child Welfare
State Department of Public Welfare
Austin, Texas


Dear Madam:

Opinion No. 0-2739-A
Re: Does Opinion No. 0-2739 conflict
with the opinion dated February
21, 1938?

Your recent request for an opinion of this depart-
ment on the above stated question has been received.

We quote from your letter as follows:

"Your opinion written by Ardell Williams,
Assistant, dated October 24, 1940, addressed to
Honorable Ernest Guinn, County Attorney, El Paso,
Texas, raised a question in our minds. We were
uncertain whether the language therein expressed
conflicted with an opinion given on February 21,
1938 by James W. Neff, Assistant Attorney General.
We, therefore, asked Judge T. E. Darcy, Supervisor,
Correspondence and Complaints, Department of Pub-
lic Welfare, to interpret these opinions in an
attempt to reconcile any difference which might be
between them.

"In a letter dated October 31, 1940, Judge
Darcy points out that in his opinion there is no
conflict in these two opinions. Will you kindly
read the attached copy of Judge Darcy's letter
and advise us whether or not his analysis is cor-
rect? If there is anything in his letter with
which you do not agree, we would like to have a
specific statement of the points in which you dif-
fer."

The Honorable Ernest Guinn, County Attorney, El Paso,
Texas, has presented a letter in connection with the above men-

Mrs. Violet S. Greenhill, Page 2


tioned inquiry which reads as follows:

"Please refer to your Opinion No. 0-2739 and related opinions.

"In view of your Opinion No. 0-2739, and particularly the last paragraph thereof, reading as follows:

"'We have been unable to find any Statute that expressly or by implication authorizes the Commissioners' Court to create and establish the office (Child Welfare Office) above mentioned and appropriate and expend funds for the maintenance of such office.'

"I advised the Commissioners' Court that they were without authority to maintain the Child Welfare Office in the County, which had been theretofore maintained by Federal funds, under State supervision. It was my opinion that this Opinion correctly stated the law on the subject.

"A member of the Division of Child Welfare of the State Department of Public Welfare, is in El Paso at this time, and I understand that they have discussed the matter further with members of your staff, and they have requested that I re-submit the question to you as follows:

"This is therefore, to request an opinion from you on the following facts:

"For three years past, the State Department of Public Welfare has maintained, in El Paso County, a district representative, operating under the Child Welfare Act, (Article 695-c, Revised Civil Statutes.) All of the salary of this worker having been paid from State and Federal funds.

"El Paso County has a Juvenile Board and appoints probation officers, who function in accordance with Articles 5139-5142.

"The County heretofore appointed a County Child Welfare Board, under the provisions of Section 4,

Mrs. Violet S. Greenhill, Page 3

Article 695-a, which reads:

"'Commissioners' court of any
county may appoint in said county seven
persons, residents therein, who shall
serve without compensation and hold of-
fice during the pleasure of the commis-
sioners' court, who shall constitute
a Child Welfare Board for the county,
which Child Welfare Board shall select
its own chairman. The Child Welfare
Board shall perform such duties as may
be required of it by the said commis-
sioners' court and Board of Control, in
furtherance of the purpose of this act.
County commissioners' court of any
county may remove any member of such
county Welfare Board for just cause.'

"Paragraph 5 of Article 695-a, provides that
the Board of Control, through said County Child
Welfare Board, should work in conjunction with
the Commissioners' Court and Juvenile Board, and
that the Board of Control was authorized to use
and allot any funds available for the accomplish-
ment of the purpose.

"Under Section 42 of Article 695-u, it is
provided that County Child Welfare Boards establish-
ed under Article 695-a could be continued.

"The State Department of Public Welfare has
requested the County to participate in the opera-
tion of a County Child Welfare Office in El Paso
County. The office is to consist of a Child Wel-
fare worker and a stenographer. The County has
been requested to appropriate $1,200.00 to apply
towards the payment of the salaries of the Child
Welfare worker and the stenographer and traveling
expenses of the Child Welfare worker, or to be ap-
plied in such other manner as the County Child
Welfare Board designates. The balance of the sal-
aries and office expenses are to be borne by
Federal aid, distributed under State supervision,
through the State Department of Public Welfare.

Mrs. Violet S. Greenhill, Page 4

The County Child Welfare Board, created under Section 4, Article 695-a, is to employ the worker and stenographer, subject to the approval of the State Department of Public Welfare. I am advised that the duties of this Child Welfare worker will consist of the following:

"'General services to dependent, neglected children or special demonstrations in certain fields, such as prevention of delinquency.'

and,

"'To safe-guard homeless, dependent and neglected children, and children who are in danger of becoming delinquent.'

and,

"'Providing case work services for children; with the County Welfare Board to gather information on child welfare; to work closely with County Welfare Board's interpreting the need of children, stimulating interest in meeting these needs through organisation of Child Welfare units; to give consultation services on problems affecting children; to make studies especially population analyses and follow up of children in institutions; to study the needs of individual children, particularly those referred for care by the public department and find ways of meeting those needs that do not involve the expenditure of public or private local funds; to interpret the needs of children and ways of meeting them by close working relationship with County officials, private agencies caring for children, local groups and interested individuals; to co-operate with existing agencies both public and private where

Child Welfare problems are involved;
to give case work services to those
agencies, both State and local, to lo-
cate and study foster homes and to
place and supervise children when the
situation demands; services are avail-
able to all children in need within the
county.'

"The County has agreed to appropriate $1,200.00
for this purpose, if it is legal. I have advised
the County Commissioners' Court that in my opinion
such an expenditure was unauthorized in law and
would constitute an illegal expenditure. It is my
further opinion that Opinion No. O-2739, reaches
the same conclusion.

"Question No. 1. Can the County appropriate
$1,200.00 for the purpose outlined above?

"Question No. 2. Is there any way the County
can pay this money to the County Child Welfare
Board to accomplish such purpose?

"In support of my contention that the appro-
priation is illegal, I refer you to my letter of
September 11, 1940, and then call these additional
facts to your attention.

"Subdivision 'd' of Section 9, Article 695-c,
reads as follows:

"'d. Provided that no provision
of this act shall in any manner inter-
fere with the powers and functions of
....the juvenile boards of any of the
counties authorized by Title 82.'

"Articles 5139-5142 set up specific offices and
provide funds for caring for dependent, neglected
and delinquent children within counties falling
within such classification. A salary of $1,500.00
a year is added to the salary of each district judge
for serving on the Juvenile Board. This additional
payment was held valid in the case of Jones vs.
Alexander, 59 S.W. (2nd) 1080. The Court in that
case states:

"'The language of this act (Articles 5139-5142) shows that it was the outstanding purpose of the Legislature to place the care and control of minors in such county or under the jurisdiction of any of its courts, under a more direct supervision of the district judges of those counties.'

and further,

"'The Legislature evidently thought that by placing the minors under more direct supervision of the district judges of those counties, it would be helpful to the minors and beneficial to the public. It is quite plain that if the powers conferred on the district judges over minors are properly exercised, it will have a tendency to lessen crime and duties of the court. Considering our form of government, a more direct, effective and responsible method could not be designed.'

"Article 5142 sets up in detail the number of juvenile officers, whose duty it is to make investigations for the Juvenile Board, and to perform all duties necessary relating to the welfare of children under the jurisdiction of the Board. The Article also provides for appointment of a school attendance officer, to be paid jointly by the county and the school authorities, for school work. The Act further provides:

"'Salary of paid juvenile officers and their assistants shall be fixed by the commissioners' court not to exceed the sums herein mentioned and any bill for expenses, not exceeding the sums herein provided for, shall be certified by the county judge as being necessary in the performance of the duties of the juvenile officer.'

"This Act provides for the appointment of the officers by the county judge, subject to the approval of the County Juvenile Board.

Mrs. Violet S. Greenhill, Page 7

"From the Statutes which come to our attention, which we have referred to, we find no authority for the appropriation of any funds for the worker to perform the duties which the Child Welfare worker is to perform, except under Article 5142, relating to the appointment of probation officers and assistants. We find no authority for the employment of workers by the County Child Welfare Board or the appropriation of funds for Child Welfare work through such Board, since Articles 5139-5142, in my opinion, specifically relate to the work which the Child Welfare worker and the Child Welfare office is to perform, and a specific appropriation and limitation of funds, as provided for in those Articles, is exclusive. A different question would exist, of course, in a county where there was not a paid Juvenile board and paid probation officers, since an implied power to appropriate funds might exist, but where a specific appropriation has been made, implied power cannot, in my opinion, arise.

"I understand that the County Child Welfare Board is very anxious to have an opinion on this matter at an early date, and I therefore request your early consideration of the matter.

"The Commissioners' Court has requested me to ask you to submit this question to a conference opinion, and I would appreciate it very much if this could be done."

With reference to the opinion above mentioned, written February 21, 1938, the following was presented to this department for an opinion:

"The Commissioners' Court some week or ten days ago passed the following order:

"By motion duly made and seconded and carried, the court agreed to co-operate in the establishment of a Child Welfare Unit for the City of Tyler and Smith County and hereby appropriates $1,200.00 for that purpose for one year.

"On a subsequent date they met and agreed on a Joint Committee with the City to have charge of

Mrs. Violet B. Greenhill, Page 8

this work and receive and disburse the monies
appropriated by the City and County.

"I am now presented with an order from the
County Judge as Chairman of the Commissioners'
Court for $100.00 to be paid to a member of this
Welfare Commission who has been designated as
Treasurer. No member of this Committee is a
county officer.

"Please give me a ruling as to whether or
not the Commissioners' Court has such authority."

With reference to the above the opinion holds:

"It is our opinion that the Commissioners'
Court is authorized to make the appropriation
for the purpose set out in your letter. Even
though no express authority existed for the
Commissioners' Court to appropriate money for a
cause of this character, we believe, in view
of the use to be made of such appropriation,
such court has the implied authority to expend
money for the purposes set out in your letter
and by the terms of Article 695b."

The letter of the county attorney of El Paso County
above quoted presents the same identical questions as passed
upon in our original Opinion No. 0-2739, addressed to the
County Attorney of El Paso County. We have carefully recon-
sidered our Opinion No. 0-2739 and are constrained to adhere
to the conclusion stated therein. That opinion specifically
answers the questions propounded in the letter of the county
attorney mentioned above.

The Division of Child Welfare of the State Department
of Public Welfare raises the question of whether the commission-
ers' court is authorized under the holding of the opinion of
February 21, 1938, to make the appropriation and expenditures
set forth in the letter of the county attorney, as above quot-
ed.

After considering the above mentioned opinion written
February 21, 1938, and our original Opinion No. 0-2739, and the

Mrs. Violet S. Greenhill, Page 9


authorities cited therein, we are of the opinion that the commissioners' court is not legally authorized to make the appropriation and expenditures heretofore mentioned and the opinion bearing date of February 21, 1938, is hereby expressly overruled insofar as it conflicts with Opinion No. O-2739.

Trusting that the foregoing fully answers your inquiry, we are

Very truly yours

ATTORNEY GENERAL OF TEXAS

APPROVED DEC 20 1940

By *Ardell Williams*

FIRST ASSISTANT
ATTORNEY GENERAL

Ardell Williams
Assistant

AW:AW

